## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**FRANK DIAZ**                                                      **CIVIL ACTION**

**VERSUS**                                                          **NO. 18-7811**

**W.S. "SANDY" MCCAIN**                                  **SECTION "G"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. <u>See</u> 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Frank Diaz, is incarcerated in the Raymond Laborde Correctional

Center in Cottonport, Louisiana.[2]  On January 21, 2015, Diaz was charged by bill of

information in Orleans Parish with second degree battery, attempted second degree

murder and extortion.[3]  The Louisiana Fourth Circuit Court of Appeal summarized the

facts established at trial in relevant part as follows:

> Kristen Blake, a 911 operator and a custodian of records of the 911
> dispatch office, identified an incident recall printout containing information
> received during a 911 call from the victim, B.A., who reported that the subject,
> Frank Diaz, had a warrant out of Florida for domestic violence.  B.A. described
> a history of domestic abuse and reported that during the previous evening, Diaz
> had struck her in the face, head, and on her body, resulting in a bump on her
> forehead.  B.A. advised that, when Diaz was asleep, she had packed up all of her
> belongings and fled the location and was on a RTA bus headed to the Greyhound
> Station.  Based on the victim's report, the 911 operator dispatched an EMS unit
> and advised B.A. to exit the bus and wait for the ambulance to arrive.  The 911
> operator also dispatched the police under a signal of misdemeanor domestic abuse
> battery.  The signal was later changed by the operator to attempted domestic
> homicide at the direction of the police officers responding to the call.
>
> [. . .]
>
> B.A. was the last witness for the State.  She testified that she was fifty-two
> years old and originally from New York.  In 2008, she was living and working in
> Miami, Florida where she began a romantic relationship with Diaz, who was a
> neighbor.  B.A. stated that while initially everything in the relationship was fine,
> things deteriorated when Diaz began drinking heavily and would become
> belligerent and berate her.  B.A. described Diaz as a jealous man.  If he saw her
> speaking with another man, Diaz would accuse her of sleeping with the man.
> According to B.A., the situation escalated over July 3 and 4, 2013, when Diaz got
> intoxicated, accused her of sexual infidelity, and then began hitting her.  B.A.
> testified that she called 911, and when she did so, Diaz left the residence and did
> not return.  In fear, B.A. went to a women's shelter and eventually obtained an

---

[2] Rec. Doc. No. 1.

[3] St. Rec. Vol. 1 of 7, Bill of Information (two pages), 1/21/15.

order of protection.  In the process of doing so, she received a phone message from Diaz stating that if he were to catch her, he would kill her.

Following the incident in Florida, B.A. testified that she moved to Puerto Rico for eight months and then relocated to New York, where she lived on the streets.  While in New York, B.A. reconnected with Diaz through his mother with whom she had kept in touch.  B.A. relocated to Texas to be with Diaz, where he was then living.  Diaz then moved to New Orleans to look for work and, in late December 2014, he asked B.A. to come to New Orleans and spend New Year's with him.  B.A. stated that Diaz offered to pay for her bus ticket; she agreed and arrived in New Orleans on New Year's Eve.

According to B.A., when she arrived in New Orleans, she stayed with Diaz in his rented trailer located on Chef Menteur Highway.  At first Diaz was "nice," but that changed when he began drinking and possibly using drugs.  B.A. testified that on January 8, 2015, it was her birthday and she was celebrating by drinking.  She claimed that Diaz became angry and demanded anal sex; she refused.  Later, B.A. spoke with her son and made the decision to leave New Orleans.

The following day, January 9, 2015, B.A. testified that she secretly packed up her belongings while Diaz was at work because she did not want Diaz to suspect that she was leaving for fear that he would get more angry.  B.A. stated that Diaz arrived home that evening at approximately 8:00 p.m. and that "[h]e didn't look right.  His eyes were weird."  She claimed Diaz was angry and that he began to beat her up because she had consumed his beer.  He demanded they have anal sex and when she refused, he continued to hit her with an open hand and pushed her to the floor where he positioned himself on top of her.  Diaz began choking her causing her to lose consciousness.

B.A. testified that when she regained consciousness, Diaz threw her on the bed and attempted to shove a plastic bag down her throat in an effort to cover her screams.  He continued to hit her and tried to grab her by the neck, choking her, while she tried to kick him off of her.  B.A. believes she momentarily lost consciousness a second time.  She stated that Diaz kept threatening to kill her and told her that if she ever told anyone about what he had done, he would beat her up so badly that no one would be able to recognize her because "he wasn't going to go to jail for nobody," not even her.

B.A. explained that after assaulting her, Diaz told her to go to sleep.  She claims she pretended to do so, and after Diaz had fallen asleep, she left the trailer.  B.A. stated that she boarded a local bus with the intention of going to the Greyhound Station to leave the city.  She testified that she called 911 from the bus because she wanted to report the assault and was told by the 911 operator to get off of the bus.  B.A. claimed she initially advised the 911 operator that she did not need an ambulance because she did not realize she was hurt.  She then exited the bus, met with the paramedics, and was transported to University Hospital where she spoke to the treating physician and met with the responding officers.

3

During cross-examination, B.A. admitted that on her birthday, January 8, 2015, she drank an entire bottle of vodka and the beer that was in Diaz's refrigerator. While B.A. conceded that she possibly had consumed a significant amount of alcohol that day, she did not believe that she was intoxicated because she had eaten. B.A. denied that she had an alcohol problem, although she conceded that she was an everyday drinker while going through menopause. She denied having ever blacked out from drinking, but admitted she had previously suffered from dehydration. B.A. further testified that sometime between her arrival in New Orleans on December 31, 2014 and January 9, 2015, she had been drinking and had fallen while at a bus stop and was treated by paramedics at the scene.

B.A. also testified on cross-examination that, contrary to the EMS report noting the victim to be accompanied by several suitcases, she only had a single bag of clothes and a Nutribullet blender with her when she left Diaz's trailer on the morning of January 9, 2015. She claimed that she left much of her clothing behind, as well as her medicines, a towel, and all the food at the trailer.

During further cross-examination, B.A. testified that the bump (hematoma) on the left side of her forehead that was noted in the medical records was not as a consequence of the assault by Diaz on January 9, 2015. According to B.A., the bump was the result of an accident that occurred when she was living in Florida where she had fallen onto a tile floor while getting out of the shower. She denied that she had been drinking when this fall occurred.

On redirect, B.A. viewed a police photograph of the black plastic grocery bag which Diaz had in his possession when he was arrested. B.A. testified that the bag looked like the one Diaz used during the assault. B.A. also described her employment in Texas, stating that she was working at a Macy's and at a Taekwondo school. During their time together in Texas, B.A. claimed that she and Diaz lost an apartment because they could not afford to pay the rent, which resulted in her having to stay in a women's shelter while continuing to work. Despite stating that she was living in a shelter in Texas, B.A. testified that she had money in a bank account when she arrived in New Orleans. She claimed that Diaz forced her to close the account and that he spent her money. [. . .]

State v. Diaz, No. 2017-KA-0324, 2017 WL 3887341, at *1–*5 (La. App. 4th Cir. Sep. 6, 2014) (footnotes omitted); State Record Volume 1 of 7, Louisiana Fourth Circuit Opinion, 2017-KA-0324, pages 1-10, September 6, 2017.

Diaz was tried before a jury on the first two counts on October 7 and 8, 2015, and found guilty as charged of second degree battery and guilty of the responsive verdict of attempted manslaughter.[4]  At a February 29, 2016 hearing, the state trial court denied Diaz's motion for a new trial.[5]  After waiver of legal delays, the court sentenced Diaz concurrently to 8 years in prison for second degree battery without benefit of parole, probation or suspension of sentence and 10 years in prison for attempted manslaughter.[6]

On direct appeal to the Louisiana Fourth Circuit, Diaz's appointed counsel asserted two errors: (1) the evidence was insufficient to support the verdicts because the State failed to prove the victim suffered serious injury or that defendant had specific intent to kill; and (2) the convictions and sentences constituted double jeopardy.[7]

On September 6, 2017, the Louisiana Fourth Circuit affirmed Diaz's convictions and sentences, as amended, finding no merit to the claims.[8]  The appellate court, however, found that the state trial court incorrectly imposed the sentence for second

---

[4] St. Rec. Vol. 1 of 7, Trial Minutes, 10/7/15; Trial Minutes, 10/8/15; St. Rec. Vol. 5 of 7, Trial Transcript, 10/7/15; St. Rec. Vol. 6 of 7, Trial Transcript (continued), 10/7/15; Trial Transcript, 10/8/15. The record is not clear as to why Diaz was not tried on the third count.

[5] St. Rec. Vol. 6 of 7, Sentencing Transcript, 2/29/16; St. Rec. Vol. 2 of 7, Motion for New Trial, 12/10/15; Trial Court Order, 2/29/16.

[6] St. Rec. Vol. 1 of 7, Sentencing Minutes, 2/29/16; St. Rec. Vol. 6 of 7, Sentencing Transcript, 2/29/16.  The State filed a multiple offender bill on December 10, 2015, and dismissed that bill on February 13, 2017.  St. Rec. Vol. 1 of 7, Multiple Bill, 12/10/15; Minute Entry, 2/13/17.

[7] St. Rec. Vol. 6 of 7, Appeal Brief, 2017-KA-0324, 6/5/17.

[8] Diaz, 2017 WL 3887341, at *1; St. Rec. Vol. 1 of 7, 4th Cir. Opinion, 2017-KA-0324, 9/6/17.

degree battery with restrictions on parole, probation or suspension of sentence. The appellate court ordered the state trial court to amend the sentencing minutes to reflect no such restriction. The state trial court complied with this order on September 12, 2017.[9]

The Louisiana Supreme Court denied Diaz's related writ application on May 18, 2018, without stated reasons.[10] His conviction and sentences became final ninety (90) days later, on August 16, 2018, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filling for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

## II.    FEDERAL HABEAS PETITION

On August 15, 2018, the clerk of this court filed Diaz's federal habeas corpus petition in which he asserts the following six grounds for relief:[11] (1) the evidence was insufficient because the victim was too intoxicated to give a truthful and accurate account of how she received several minor injuries; (2) the State failed to prove beyond a reasonable doubt that petitioner had specific intent to kill and commit second degree

---

[9] St. Rec. Vol. 1 of 7, Minute Entry, 9/12/17.

[10] State v. Diaz, 242 So.3d 1226 (La. 2018); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2017-KO-1722, 5/18/18; La. S. Ct. Writ Application, 17-KO-1722, 10/12/17 (dated 10/3/17); St. Rec. Vol. 2 of 7, La. S. Ct. Letter, 2017-KO-1722, 10/12/17.

[11] Rec. Doc. No. 1.

battery; (3) the State knowingly used perjured testimony of the victim and its witnesses; (4) the State's use of other crimes evidence deprived him of a fundamentally fair trial in which there was no physical evidence; (5) the convictions and sentences are a violation of double jeopardy; and (6) trial and appellate counsel were ineffective for not properly asserting and arguing the constitutional claims supported by the record.

The State filed a response in opposition to Diaz's petition asserting that he failed to exhaust state court review, except as to the two claims asserted on direct appeal.[12] Diaz filed a reply to the State's response asserting that he has exhausted all known avenues of relief in the state courts, the State did not specify the unexhausted claims and his claims have merit.[13]

## III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996,[14] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore

---

[12] Rec. Doc. No. 11, pp. 2, 3.

[13] Rec. Doc. No. 12.

[14] The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Diaz's petition, which, for reasons discussed below, is deemed filed in a federal court on August 9, 2018.[15]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419–20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes the timely filing of Diaz's petition and does not assert a procedural default.  The State contends and the record demonstrates, however, that Diaz failed properly to exhaust state court remedies as to <u>all</u> of his claims before filing his federal petition.  Diaz's federal petition, therefore, should be dismissed without prejudice for failure to exhaust, unless he dismisses the unexhausted claims.

## IV.    EXHAUSTION OF STATE COURT REMEDIES

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief."  Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20

---

[15] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk filed Diaz's petition on August 15, 2018, when it was received.  Diaz dated his signature on the brief attached to the petition on August 9, 2018.  This is the earliest date appearing in the record on which Diaz could have presented his pleadings to prison officials for mailing to a federal court.

(1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Id. (citing Picard v. Connor, 404 U.S. 270, 275–78 (1971)) (emphasis added). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan v. Walker, 533 U.S. 167, 177–79 (2001).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275–78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." Id. (emphasis added) (citing Nobles, 127 F.3d at 420). It is not enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court. See Baldwin v. Reese, 541 U.S. 27, 32 (2004) (a

petitioner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

To exhaust review of his claims in the state courts, Diaz must fairly present the same claims and legal theories he urges in this federal court to the state courts through the Louisiana Supreme Court in a procedurally proper manner.  To provide the state courts with the necessary "opportunity" for review, the petitioner must "fairly present" his claim in each appropriate level of the state courts, including discretionary levels of review.  Baldwin, 124 U.S. at 29; Mercadel v. Cain, 179 F.3d 271, 275 (5th Cir. 1999).  Diaz did not properly assert three of his claims on direct appeal nor has he sought state post-conviction review of any claim.

As the State concedes, the record demonstrates that Diaz exhausted review of the first and second claims of insufficient evidence and his fifth claim of double jeopardy through review of his direct appeal in the Louisiana Supreme Court.  However, Diaz did not seek state court appellate review or any state court post-conviction review[16] of his third (perjured testimony), fourth (other crimes evidence) and sixth (ineffective assistance of counsel) claims before presenting them to this federal court.

---

[16] Under Louisiana law, a claim not raised on direct appeal must first be asserted in a uniform application for post-conviction relief in the state district court before it can be considered in the higher state courts.  La. Code Crim. P. arts. 925, 926(A).  The petitioner then may seek supervisory review in the appellate court, La. Code Crim. P. art. 930.6, and discretionary review in the Louisiana Supreme Court, La. S. Ct. Rule X §5.

Diaz's counsel made unsuccessful <u>pretrial</u> challenges to the State's use of other crimes evidence in the state trial court and in the Louisiana Fourth Circuit.[17]   The Louisiana Fourth Circuit denied pretrial consideration of the claim because Diaz had "an adequate remedy on appeal."[18]  Diaz did not seek review of that ruling.  He also did not assert the other crimes evidence claim on direct appeal as instructed.

Instead, Diaz asserted the claim to the Louisiana Supreme Court without having asserted it on direct appeal, even though the Louisiana Fourth Circuit had specifically directed him to do so because direct appeal was his "adequate remedy" under state law.[19] His failure to assert the claim in the appellate court before presenting it to the Louisiana Supreme Court leaves the claim unexhausted.

Similarly, Diaz did not present his third (perjury) and sixth (ineffective assistance of counsel) claims to the state trial or appellate courts at any time before he asserted them in his writ application to the Louisiana Supreme Court following direct appeal.  He did not give each level of the state courts a fair or procedurally proper opportunity to review his claims.  State court review of these claims is also unexhausted. <u>Baldwin</u>, 124 U.S. at 29 (fair presentation means presentation to "each appropriate state court"); <u>Mercadel</u>, 179

---

[17] St. Rec. Vol. 7 of 7, 4th Cir. Order, 2015-K-0547, 5/22/15; 4th Cir. Writ Application, 2015-K-547, 5/21/15.

[18] St. Rec. Vol. 7 of 7, 4th Cir. Order, 2015-K-0547, 5/22/15.

[19] <u>Id</u>.

F.3d at 275 (a petitioner fails to exhaust a claim when he raises it for the first time in the Louisiana Supreme Court after bypassing the state district and appellate courts).

Diaz has not allowed the state courts one full opportunity to review all of his claims through the Louisiana Supreme Court.  This case, which includes both exhausted and unexhausted claims, is therefore a "mixed petition," and it is subject to dismissal for that reason.  See Whitehead, 157 F.3d at 387 (citing Nobles, 127 F.3d at 420).

The Supreme Court has long required that a mixed petition like this one should be dismissed without prejudice to allow for complete exhaustion.  Pliler v. Ford, 542 U.S. 225, 233 (2004) (citing Rose, 455 U.S. at 510).  In Pliler, however, the Supreme Court also addressed the possibility of a stay-and-abeyance in connection with "mixed petitions" for habeas relief containing both exhausted and unexhausted claims.  Id., 542 U.S. at 230–31.  The Pliler Court reiterated the long-standing directive that a mixed petition should be dismissed without prejudice to require exhaustion.  Id. at 230.  The Supreme Court recognized that a petitioner has two choices when faced with dismissal of a mixed petition: (1) return to the state courts to exhaust the claims in full; or (2) amend or resubmit the petition to pursue only exhausted claims in the federal district court.  Id. at 230–31.  **Diaz is hereby instructed that he must make this choice now.**

After Pliler, the Supreme Court later held that stay-and-abeyance was an extraordinary remedy not to be made readily available to a habeas petitioner.  Rhines v. Weber, 544 U.S. 269, 278 (2005).  The Rhines Court cautioned that a stay-and-abeyance

12

"should be available only in <u>limited</u> circumstances," and is appropriate <u>only</u> when the district court determines that there was "good cause" for the failure to exhaust. <u>Id</u>. at 277 (emphasis added). Stays are improper when the unexhausted claims are "plainly meritless" or when the petitioner has engaged in "abusive litigation tactics or intentional delay." <u>Id</u>. at 277–78.

In this case, the record discloses no good cause for Diaz's failure to exhaust review of his third, fourth and sixth claims, and I can find none. Diaz simply did not give the state courts a full opportunity to complete review of all of his claims.

Having shown no good cause for his failure to exhaust or to support a stay-and-abeyance, this petition should be dismissed <u>without</u> prejudice to allow Diaz to exhaust available state court remedies as to all of his claims. **However**, **Diaz is hereby provided with the option, within the fourteen (14) day objection period provided below, to amend his habeas petition to dismiss the unexhausted claims and present <u>only</u> the exhausted claim identified in this report**. <u>Pliler</u>, 542 U.S. at 233 (citing <u>Rose</u>, 455 U.S. at 510); <u>Whitehead</u>, 157 F.3d at 387.

## <u>RECOMMENDATION</u>

For the foregoing reasons, unless Diaz dismisses his three unexhausted claims so that the court may proceed with his three exhausted claims, it is **RECOMMENDED** that Diaz's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[20]

New Orleans, Louisiana, this ___25th___ day of January, 2019.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[20] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.